Roland Tellis (SBN 186269)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436-2870
Telephone: (818) 839-2333
rtellis@baronbudd.com

Attorney for Plaintiff and the Putative Class

[Additional Attorneys on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GARCIA, III, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS LLC, a Delaware Limited Liability Company; ONSTAR, LLC, a Delaware Limited Liability Company; and LEXISNEXIS RISK SOLUTIONS INC., a Delaware Corporation,<br><br>Defendants. | Civil Action No. _____<br><br>CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Section**                                                                                        **Page**

I.      INTRODUCTION ................................................................................... 1

II.     PARTIES ............................................................................................... 2

III.    JURISDICTION AND VENUE .............................................................. 2

IV.     FACTUAL ALLEGATIONS .................................................................. 3

        A.      Defendants Have Engaged In Unlawful Conduct In Connection
             With The Sale Of Consumer Data ................................................. 3

        B.      Plaintiff Garcia Was Harmed ........................................................ 6

V.      CLASS ALLEGATIONS ........................................................................ 7

VI.     CAUSES OF ACTION ........................................................................... 10

        COUNT I: Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.* ................ 10

        COUNT II: California Constitutional Right to Privacy ........................... 11

        COUNT III: Violation of California's Consumers Legal Remedies Act,
             Cal. Civ. Code § 1750, et seq. ("CLRA") ....................................... 12

        COUNT IV: Violation of California's Unfair Competition Law,
             California Business & Professions Code § 17200, et seq. ("UCL") ............... 14

        COUNT V: Unjust Enrichment ................................................................ 16

        COUNT VI: Invasion of Privacy .............................................................. 17

VII.    PRAYER FOR RELIEF ........................................................................ 18

VIII.   JURY TRIAL DEMANDED ................................................................... 19

Plaintiff David Garcia, III ("Plaintiff"), by and through his undersigned counsel, brings this action against Defendants General Motors LLC ("GM"), OnStar LLC ("OnStar"), and LexisNexis Risk Solutions Inc. ("LexisNexis," and collectively with GM and OnStar, "Defendants"), individually and on behalf of all others similarly situated ("Class Members"), and in support thereof, alleges upon personal knowledge as to his own action, and upon information and belief and his counsels' investigations as to all other matters, as follows:

## I.   INTRODUCTION

1.      This case arises from the clandestine tracking, interception, transmission, and collection of Americans' driving behavior data with secret computer systems automatically installed in their vehicles or on their cellular telephones.

2.      In recent years, vehicles have become more and more sophisticated, integrating electronics into nearly every component. These electronics perform a variety of functions, including running a vehicle's engines, brakes, air conditioning, and entertainment systems.

3.      But as was recently unveiled in a March 11, 2024 New York Times article,[1] these electronics were also carrying out a more nefarious purpose: the secret tracking, interception, transmission, and collection of millions of drivers' personal driving behavior data, which was then sold by GM and OnStar through intermediaries such as LexisNexis Risk Solutions to automobile insurance companies, who in turn used the data to increase drivers' vehicle insurance premiums.

4.      The information collected included what LexisNexis calls "telematics data," which itself includes acceleration events, hard brake events, high speed events, distance traveled, time of day traveled, vehicle information such as VINs, and sometimes location data and GPS data.

5.      Plaintiff is just one of the millions of drivers of GM-manufactured vehicles who had his data secretly intercepted and used in this illegal scheme. Plaintiff brings this action for damages and injunctive relief on behalf of all persons whose driver behavior data was impacted by Defendants' illegal conduct.

---

[1] Kashmir Hill, *Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies*, N.Y. TIMES (Mar. 11, 2024), https://www.nytimes.com/ 2024/03/11/technology/carmakers-driver-tracking-insurance.html.

## II.   PARTIES

6.     Plaintiff David Garcia, III is a natural person, and a resident and citizen of California. Plaintiff Garcia resides in Los Angeles, California.

7.     Defendant General Motors LLC is a limited liability company organized under the laws of Delaware, with its headquarters and principal place of business located in Detroit, Michigan. GM manufactures and sells vehicles in the United States and across the world, including Chevrolet, GMC, Cadillac, and Buick branded vehicles.

8.     Defendant OnStar LLC is a limited liability company organized under the laws of Delaware, with its headquarters and principal place of business located in Detroit, Michigan. Defendant OnStar is a subsidiary of Defendant GM and provides communications, security, emergency services, navigation, diagnostics, and information services to GM vehicles in the United States and across the world.

9.     Defendant LexisNexis Risk Solutions Inc. is a corporation organized under the laws of Delaware with its principal place of business in Alpharetta, Georgia. Defendant LexisNexis obtained Plaintiff's and Class Members' driver behavior data from GM and OnStar and shared it with third parties, including insurance companies.

## III.   JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action, at least one proposed Class Member is of diverse citizenship from Defendants, the proposed Class (defined below) includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

11.     This Court has personal jurisdiction over each Defendant because California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or the United States." Code Civ. Proc. § 410.10. Each Defendant purposefully directed activities (*e.g.*, car sales, roadside assistance services, and collection of consumer data) at this forum, and Plaintiff's claims arise out of and relate to those activities. Accordingly, the exercise of personal jurisdiction over each Defendant would comport with traditional notions of fair play and substantial justice.

12.     Venue is proper in this District under 28 U.S.C. §1391 because Plaintiff and Class Members reside in this District, a substantial parts of the events giving rise to the claims in this action were related to activities that took place in this District, and Defendants conduct substantial business in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     Defendants Have Engaged In Unlawful Conduct In Connection With The Sale Of Consumer Data

13.     Starting in 2015, GM equipped many of its vehicles with OnStar software and related applications. The OnStar-related applications on GM vehicles, with names such as MyChevrolet, MyBuick, and MyCadillac, allow GM and OnStar to collect, record, store, and transmit data relating to driver behavior, including the vehicle's condition. Driver behavior also includes things such as the driver's average speed; percentage of time the driver exceeds 80 miles per hour; the driver's frequency and intensity of acceleration and braking; and late-night driving. The OnStar software collects, records, and stores this myriad driver behavior data after each drive.

14.     GM falsely claims it does not automatically enroll drivers in OnStar, that OnStar is an "opt-in" application, and that OnStar does not collect driving behavior data without consent. In fact, GM and OnStar track, collect, intercept, store, and ultimately transmit and share driver behavior data with third parties, whether or not a driver consents.

15.     Neither GM nor OnStar provide consumers with any disclosure that their driver behavior data is being or will be collected, gathered, stored, transmitted, or sold to third parties. More disconcerting still is that GM and OnStar do not disclose their sale of driver behavior data to third parties like LexisNexis who then resell – for profit – the data to automobile insurers resulting in higher insurance quotes or premiums.

16.     Neither GM nor OnStar compensate consumers for the use or sale of their driver behavior data.

17.     Instead, GM and OnStar make false and misleading representations to consumers that OnStar is an "optional" product, that collection of their data is "optional," and that OnStar simply

"help[s] [drivers] maximize their vehicle's overall performance, reduce vehicle wear and tear and encourage safe driving."

18.     Defendants claim to have secured drivers' consent for the collection and dissemination of driving data. Yet, this purported 'consent' is obscurely placed in the fine print of lengthy and ambiguous privacy policies, effectively concealing the existence of these partnerships and the full scope of data sharing from the drivers.

19.     Even for drivers who consciously opt into services like OnStar's Smart Driver, the disclosures fall short of transparently acknowledging the extent of data sharing. For instance, there was no clear warning or prominent disclosure indicating that opting into such services would result in third-party access to one's driving data. This practice is misleading and obscures the true risks associated with data sharing.

20.     GM's and OnStar's interception, misrepresentation, and material omission contradicts the very promise these Defendants make to use appropriate safeguards to protect drivers' data from unintended disclosure.

21.     GM and OnStar were recently forced to admit that they had, in fact, been sharing drivers' data with third parties such as LexisNexis all along, stating, "As of March 20, 2024, OnStar Smart Driver customer data is no longer being shared with LexisNexis or Verisk." By this time, likely tens or hundreds of millions of driver behavior data points had been surreptitiously collected, transmitted, and sold by GM and OnStar to third parties like LexisNexis, which in turn sold those data points to insurance companies, collectively costing consumers millions of dollars in higher insurance premiums.

22.     LexisNexis was not some good-faith, innocent data broker, but an integral player in the scheme.

23.     LexisNexis is a self-described "analytics provider for industries around the globe, including financial services, retail/ecommerce, logistics and telecommunications," that offers data analytics to thousands of other companies, including the automobile insurance industry, claiming to

"help insurers and automakers streamline business processes, control costs and improve customer experiences."[2]

24.    LexisNexis purports to "help" automobile insurers by collecting and consolidating third-party data that can be used to set or modify (most often, increase) drivers' automobile insurance quotes or premiums.[3]

25.    LexisNexis offers to insurers, for a price, driver behavior data among other data. As LexisNexis itself touts, it combines "[e]verything [insurers] need to assess driving risk, all in one place."[4]

26.    LexisNexis boasts that its data analytics provides "comprehensive insights about household drivers, vehicles, and policy history," and touts its "telematics solutions" as "provid[ing] timely connected car data and mobility risk insights[.]"[5]

27.    More specifically, LexisNexis admits to "receive[ing] and manage[ing] data from connected vehicles, mobile apps and third-party services. The driving behavior data received is normalized and used to generate scores and attributes that are more easily ingested into insurance workflows to help better assess risk." According to LexisNexis, this allows insurers to "predict insurance loss potential," i.e., set quotes or premiums. LexisNexis is unabashed about what it offers to automobile insurers, promising to: "improve your ability to assess risk and capture otherwise missed premium."[6]

28.    LexisNexis obtains driver behavior data, repackages it, and sells its to automobile insurers, which often results in higher insurance premiums for the drivers whose data is being used. This occurs without drivers' full knowledge and consent, including Plaintiff and Class Members.

---

[2] *Transform Your Risk Decision Making*, LexisNexis (2024), available at: https://risk.lexisnexis.com/ (last accessed: April 25, 2024).
[3] *Id.*
[4]    LexisNexis    Drive    Optics,    available    at:    https://risk.lexisnexis.com/-/media/files/insurance/brochure/nxr14054-00-0919-en-us_lexisnexis_drive_optics_brochure_09_13_2019%20pdf.pdf
[5] *Auto Insurance Quoting and Underwriting Solutions*, LexisNexis (2024), available at: https://risk.lexisnexis.com/insurance/auto/quoting-underwriting (last accessed: April 25, 2024).
[6] *Id.*

29.     On information and belief, LexisNexis has never disclosed that it obtains driver behavior data from GM and OnStar without drivers' knowledge or consent, nor that it sells such data to automobile insurers. LexisNexis never compensates any of those drivers even a penny of its profits from those sales.

30.     LexisNexis knowingly purchases or otherwise obtains driver behavior data that GM and OnStar surreptitiously intercepts and collects from consumers. Then, LexisNexis turns a profit for itself by marketing that driver behavior data to automobile insurers, who in turn often set or increase drivers' quotes or premiums based on the data. Everyone in this series of transactions profits, except drivers themselves – the very people whose data is being collected and brokered without their full knowledge and consent.

31.     Plaintiff and other Class Members suffered actual harm and the risk of future harm as a result of GM's and OnStar's illicit activities, including, but not limited to, invasion of their privacy interest in their own data, loss of control over their own data, the sale of their own data without compensation, and adverse credit reporting and impaired credit scores.

**B.     Plaintiff Garcia Was Harmed**

32.     Plaintiff purchased a new 2017 Chevrolet Silverado Z71, 4-Door from Chevrolet of Puente Hills in California in or around October 2016. Plaintiff Garcia's purchase agreement made no mention of LexisNexis, data sharing, or anything related to privacy.

33.     Plaintiff has never knowingly opted into sharing his driving behavior data with anyone, much less agrees that his driving behavior data could be shared with or sold to a third party who would thereafter share or sell his information to other companies.

34.     Plaintiff is informed and believes that GM and OnStar sold and shared his driving behavior data to LexisNexis without his knowledge and consent.

35.     LexisNexis's consumer-related disclosures and reports regarding driver behavior contain each driving event, including trip details that show the start date, end date, start time, end time, acceleration events, hard brake events, high speed events, distance, and VIN.

36.     Notably absent from these consumer disclosures and reports is any context related to these driving events. The reports do not define what these events mean nor how they are calculated.

Furthermore, the reports do not explain how or why someone might have experienced these events. Stating these events, by themselves, says nothing of the other driving conditions and factors one may have experienced.

37.     Upon information and belief, the uncontextualized, misleading, and personal driving information LexisNexis shared with Plaintiff's insurance company resulted in increases in his vehicle insurance premiums.

38.     Moreover, Plaintiff is informed and believes that GM and OnStar mislead individuals such as him about their data-sharing practices. Plaintiff Garcia never knowingly consented to these practices.

39.     Plaintiff Garcia's privacy has been gravely invaded by Defendants' improper actions.

## V.     CLASS ALLEGATIONS

40.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

41.     Plaintiff proposes the following class definition, subject to amendment as appropriate:

> All persons residing in California who owned or leased a GM manufactured vehicle and who had their vehicle's driving data collected and shared with a third party without their consent (the "Class").

Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, officers, agents, and directors, and any entities in which Defendants have a controlling interest; the judges(s) presiding over this matter, and the clerks, judicial staff, and immediate family members of said judges(s); Plaintiff's counsel; and Defendants' counsel.

42.     Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

43.     The Class defined above are readily ascertainable from information in Defendants' possession. Thus, identification of Class Members will be reliable and administratively feasible.

44.     Plaintiff and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Federal Rule of Civil Procedure 23.

45. **Numerosity.** The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class each consists of millions individuals who owned or leased GM vehicles.

46. **Commonality.** There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, but are not limited to:

      a.    Whether GM and OnStar collected and tracked Plaintiff's and Class Members' driving behavior.

      b.    Whether Plaintiff and Class Members consented to have their data shared with LexisNexis and third parties.

      c.    Whether LexisNexis obtained Plaintiff's and Class Members' driver behavior data without consent.

      d.    Whether LexisNexis sold Plaintiff's and Class Members' driver behavior data to third parties without consent.

      e.    Whether Defendants conduct constitutes violations of the California Invasion of Privacy Act.

      f.    Whether Defendants' conduct constitutes violations of the California Consumer Legal Remedies Act.

      g.    Whether Defendants' conduct constitutes violations of the California Unfair Competition Law.

      h.    Whether Defendants' practices constitute and invasion of privacy.

      i.    Whether Defendants' conduct was knowing and willful.

      j.    Whether Defendants are liable for damages, and the amount of such damages.

      k.    Whether Defendants should be enjoined from such conduct in the future.

47. **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was improperly collected and shared with third parties without their consent. Moreover, Plaintiff and Class Members were subjected to Defendants' uniformly illegal and impermissible conduct.

48.     **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's counsel are competent and experienced in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the other members of the Class.

49.     **Predominance.** Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' data was collected, transmitted, and sold in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

50.     **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

51.     The claims brought herein are manageable. Defendants' uniform conduct, the consistent provision of the relevant laws, and ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this case as a class action.

52.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

53.     Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

54.     Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution

of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

**VI.    CAUSES OF ACTION**

**COUNT I: Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.***
**(On Behalf of Plaintiff and the Class)**

55.    Plaintiff repeats and realleges all preceding paragraphs contained herein.

56.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communication and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

57.    Defendants' acts and practices complained of herein, engaged in for purposes of storing and tracking indefinitely the location information of car owners and thus determining their movements over time (and all other inferences derivable therefrom), without their consent violated and continues to violate Cal. Pen. Code § 637.7.

58.    Cal. Pen. Code § 637.7(a) prohibits the use of an electronic tracking device to determine the location or movement of a person. As used in Cal. Pen. Code § 637.7, "electronic tracking device" means "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

59.    In direct violation of this prohibition, and without the consent of Plaintiff or Class Members, Defendants continued to record, store, and use the location and movement of Plaintiff's and Class Members' vehicles and provide that information to third parties.

60.    As described herein, Defendants utilized "electronic tracking devices" as defined by Cal. Pen. Code § 637.7(d), in that Defendants used "devices"—including the vehicles' own telematics systems, including, but not limited to, onboard diagnostics systems and built-in GPS functionality, which are mechanical or electronic equipment— attached to, and located within, each Class Member's vehicle (a "movable thing") to "reveal[] its location or movement by the transmission of electronic signals."

61. Defendants unlawfully used those electronic tracking devices "to determine the location or movement of a person"—namely, Plaintiff and Class Members. Defendants engaged in such storage and tracking of each Class Member's movement after Defendants had affirmatively (but falsely) misrepresented that they would not store and track each Class Member's movement and transmit to third parties or omitted such information altogether.

62. As a result of Defendants' violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiff and Class Members are entitled to the following relief:

      a.     A declaration that Defendants' conduct violates CIPA;

      b.     Statutory damages and/or trebled actual damages;

      c.     Injunctive relief in the form of, inter alia, an order enjoining Defendants from collecting and transmitting data of Class Members to third parties in violation of CIPA;

      d.     Injunctive relief in the form of, inter alia, an order requiring Defendants to destroy all data created or otherwise obtained from Class Members; and

      e.     An award of attorneys' fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and also codified at California Civil Code Section 1021.5, and all other applicable laws.

**COUNT II: California Constitutional Right to Privacy**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff repeats and realleges all preceding paragraphs contained herein.

64. Plaintiff and Class Members have reasonable expectations of privacy in their vehicles and movements. Plaintiff's and Class Members' private affairs include their behavior in their vehicles as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants' tracking.

65. Defendants intentionally intruded on and into Plaintiff's and Class Members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting data from their vehicles.

66. These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms. This

11

is evidenced by, inter alia, Supreme Court precedent (most recently and forcefully articulated in the Carpenter opinion), legislation enacted by Congress and the California legislature, rules promulgated and enforcement actions undertaken by the FTC, petitions and litigation initiated in the United States and abroad,  as well as countless studies, op-eds, and articles decrying location tracking, and Defendants' own statements.

67.   Plaintiff and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

68.   Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class Members.

69.   As a result of Defendants' actions, Plaintiff and Class Members seek damages and punitive damages in an amount to be determined at trial.  Plaintiff and Class Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and Class Members and were made in conscious disregard of Plaintiff's and Class Members' rights.  Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**COUNT III: Violation of California's Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750, et seq. ("CLRA")**
**(On Behalf of Plaintiff and the Class)**

70.   Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

71.   Defendants are each a "person," under Cal. Civ. Code § 1761(c).

72.   Plaintiff is a "consumer[]," as defined by Cal. Civ. Code § 1761(d), who purchased or leased a vehicle whose location data was collected by Defendants.

73.   Defendants' conduct, as described herein, in misrepresenting the characteristics, qualities, benefits and capabilities of the vehicles and the installed OnStar system, or omitting material information, violates the CLRA. Specifically, Defendants violated the CLRA by omitting material facts and failing to disclose their data collection and transmission practices, engaging in the following

practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the collection and dissemination of Plaintiff's and Class Members' location data:

    a.    representing that the vehicles equipped with the data collection and dissemination systems have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

    b.    representing that the vehicles equipped with the data collection and dissemination systems are of a particular standard, quality, or grade if they are of another;

    c.    advertising the vehicles equipped with the data collection and dissemination systems with intent not to sell them as advertised; and

    d.    representing that the vehicles equipped with the data collection and dissemination systems have been supplied in accordance with previous representations when they have not.

74.    Defendants violated the CLRA by selling and leasing vehicles that they knew collected and transmitted information to third parties via the telematics systems. Defendants omitted from Plaintiff and other Class Members the material fact that vehicles were sold with these systems that collected and disseminated vehicles' location data. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

75.    Defendants knew, at the time they sold Plaintiff and Class Members their vehicles, of the material fact that the vehicles were equipped with data collection and dissemination systems. Defendants' conduct in selling these vehicles and omitting information about their data collection and dissemination systems was fraudulent, wanton, and malicious.

76.    Defendants' unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class Members suffering actual damage on account of receiving a car that contained telematics systems that collected and transmitted data to third parties.

77.    Plaintiff and the other Class Members paid for a car that was supposed to meet certain specifications. When they received a vehicle that did not conform to these specifications, and which fell below the standards set by and described in Defendants' representations, Plaintiff and the other Class Members were damaged on account of having their privacy invaded; their location data collected and

transmitted to third parties; and paid more than they would have for their vehicles had they know that the vehicles are equipped with systems that collect and disseminate their location data. Plaintiff and the other Class Members suffered diminution in the value of their data and vehicles, and other damages recoverable under the law.

78.     Plaintiff need not notify Defendants of their violations of § 1770 of the CLRA as notice will be futile.  Pursuant to § 1780(d) of the Act, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

**COUNT IV: Violation of California's Unfair Competition Law, California Business & Professions Code § 17200, et seq. ("UCL")**
**(On Behalf of Plaintiff and the Class)**

79.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

80.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, et seq., and the common law.

81.     In the course of conducting business, Defendants committed "unfair" business practices by, among other things, misrepresenting and omitting material facts regarding the characteristics, capabilities, and benefits of the vehicles and the telematics systems they were equipped with. There is no societal benefit from such false and misleading representations and omissions, only harm. While Plaintiff and other Class Members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair" as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

82.     Defendants knew when vehicles were first sold and leased that they were equipped with telematics systems that collected and transmitted information concerning drivers and passengers to third parties.

83.     Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

84.     The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by, among other things, prominently making the representations (which also constitute advertising within the meaning of Business & Professions Code § 17200) and omissions of material facts regarding the characteristics of the vehicles, the telematics systems they were equipped with, and their data collection and dissemination activities.

85.     Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading, and likely to deceive the consuming public within the meaning of the UCL.

86.     Plaintiff and California Class Members were deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. Plaintiff and other California Class members suffered injury in fact and lost money as a result of purchasing a deceptively advertised vehicle by having their privacy invaded; their location data collected and transmitted to third parties; paying more than they would have for their vehicles had they know that the vehicles are equipped with systems that collect and disseminate their location data; and incurring other consequential inconvenience, aggravation, damages, and loss of money and time.

87.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

88.     Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendants of all money obtained from Plaintiff and the other members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

### COUNT V: Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

89.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

90.     Plaintiff and Class Members owned or leased vehicles equipped with telematics services provided by GM and OnStar, which collected extensive personal driving data, including, but not limited to, locations, speeds, and other driving behaviors, without the informed consent of Plaintiff and Class Members.

91.     GM and OnStar, without the consent or knowledge of Plaintiff and Class Members, sold this highly personal and proprietary driving data to LexisNexis.

92.     LexisNexis, upon receiving the data from GM and OnStar, utilized it for various commercial purposes, including, but not limited to, the creation and dissemination of consumer reports. These reports were sold to third parties, such as insurance companies, generating substantial revenue for LexisNexis.

93.     GM, OnStar, and LexisNexis have unjustly enriched themselves by commercially exploiting Plaintiff's and Class Members' proprietary driving data, directly at the expense of their privacy and financial interests.

94.     Defendants' appropriation of Plaintiff's and Class Members' driving data constitutes the direct conferral of a benefit without just compensation.

95.     Plaintiff and Class Members did not freely or knowingly allow Defendants to exploit their personal and proprietary data for commercial gain. If Plaintiff and Class Members had been

informed of Defendants' intentions to profit from their personal driving data, they would not have consented to such use.

96.     The enrichment of Defendants at the expense of Plaintiff and Class Members is against equity and good conscience. Defendants' retention of the benefits without proper compensation to Plaintiff and Class Members is unjust and warrants restitution.

97.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and Class Members have suffered damages and have been deprived of the economic value of their personal and proprietary information.

98.     Defendants should be compelled to disgorge, in a common fund for the benefit of Plaintiff and Class Members, all unlawful or inequitable proceeds that Defendants received, and such other relief as the Court may deem just and proper.

### COUNT VI: Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

99.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

100.    Plaintiff's and Class Members' personal and private driving data was collected, used, and disclosed by Defendants without their consent.

101.    Without the consent or knowledge of Plaintiff and Class Members, GM and OnStar collected comprehensive driving data, including, but not limited to, locations, speeds, and other sensitive information that Plaintiff and Class Members expected to remain private.

102.    GM and OnStar then disclosed this highly personal and sensitive information to LexisNexis, who further disseminated it to third parties, including insurance companies, for commercial gain.

103.    The publication of these private facts about Plaintiff and Class Members by Defendants to third parties is offensive and not of any legitimate public concern.

104.    Defendants' actions, including the unsolicited sharing and publication of Plaintiff's and Class Members' personal driving data, intrude upon the solitude, seclusion, and private affairs of Plaintiff and Class Members in a manner that would be highly offensive to a reasonable person.

105. California courts recognize the tort of invasion of privacy under common law.

106. The conduct of Defendants as described herein constitutes an invasion of privacy under two distinct theories recognized under California law: the public disclosure of private facts and intrusion upon seclusion.

107. Defendants have engaged in the public disclosure of private facts by sharing sensitive and private driving data of Plaintiff and Class Members with third parties without their consent. These disclosures are highly offensive and not of legitimate concern to the public.

108. Defendants have intentionally intruded upon the solitude, seclusion, and private concerns of Plaintiff and Class Members through their unsanctioned collection, use, and dissemination of private driving data. This intrusion is highly offensive and constitutes an invasion of privacy under California law.

109. As a result of Defendants' conduct, Plaintiff and Class Members have suffered damages.

**VII.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Members of the proposed Class, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as Class counsel;

B. Declaring that Defendants' conduct, as set forth above, violates the state statutes cited herein;

C. Ordering injunctive relief including, but not limited to, ordering Defendants to delete all driver data of Plaintiff and Class Members, and to implement procedures to require consent before recording or selling their data;

D. Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiff and Class Members in an amount to be determined at trial;

E. Awarding Plaintiff and Class Members their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and Class Members pre- and post-judgment interest, to the extent allowable;

G.    Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and Class Members;

H.    An award of punitive damages pursuant to 15 U.S.C. §1681n(a)(2) and 18 U.S.C. §2520(b); and

I.    Awarding such other and further relief as the Court deems reasonable and just.

## VIII.   **JURY TRIAL DEMANDED**

Under Federal Rule of Civil Procedure 30(b), Plaintiff demands a trial by jury for all issues in this action so triable as of right.

Dated:  April 29, 2024                Respectfully submitted:

*/s/ Roland Tellis*
Roland Tellis (SBN 186269)
**BARON & BUDD, P.C.**
15910 Ventura Blvd, Ste 1600
Encino, CA 91436-2870
Telephone: (818) 839-2320
rtellis@baronbudd.com

James E. Cecchi (*pro hac vice forthcoming*)
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
T: 973-994-1700
jcecchi@carellabyrne.com

***Attorneys for Plaintiff and the Putative Class***